UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AARON C. PORTER,

     Plaintiff,

v.                              Case No. 4:20cv230-MW-HTC

MARK S. INCH, et al.,

     Defendants.

_____/

<u>ORDER AND AMENDED REPORT AND RECOMMENDATION</u>

Plaintiff Aaron C. Porter initiated this action on April 28, 2020 by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF Doc. 1) and a motion for leave to proceed *in forma pauperis* (ECF Doc. 2). The matter was referred to the undersigned for preliminary screening and a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). On May 21, 2020 the undersigned issued an R&R recommending that Plaintiff's motion for leave to proceed *in forma pauperis* be denied and this case be dismissed pursuant to 28 U.S.C. § 1915(g) because Plaintiff (1) is a three-striker; (2) failed to demonstrate that he was in imminent danger of serious physical injury; and (3) failed to pay the requisite filing fee upon initiating this action. ECF Doc. 4.

In response to the May 21 R&R, Plaintiff filed an objection to the R&R (ECF Doc. 5) as well as a motion for leave to supplement his complaint (ECF Doc. 6) with

an accompanying proposed "First Amended and Supplemental Complaint" (ECF Doc. 6-1). Plaintiff seeks to add a new defendant, law library supervisor Andrew Peil, and a new instance of alleged wrongful conduct involving Peil and Defendant Bellamy, which occurred *after* this action was filed.[1] Plaintiff contends these later events demonstrate he is imminent danger of serious physical injury and, therefore, should be allowed to proceed with this matter without the payment of the filing fee despite his three-strike status.

Upon careful consideration of Plaintiff's motion for leave to supplement and the proposed supplemental complaint, the undersigned VACATES her May 21 R&R (ECF Doc. 4) and issues this Amended R&R. For the reasons set forth below, the undersigned recommends that Plaintiff's motion for leave to proceed *in forma pauperis* (ECF Doc. 2) be DENIED, that his motion to supplement (ECF Doc. 6) be DENIED as futile, and that this case be DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(g).

## I.    BACKGROUND

The following facts are derived from Plaintiff's initial complaint (ECF Doc. 1) and his proposed supplemental complaint (ECF Doc. 6-1) and are assumed true for purposes of this Amended R&R:

---

[1] Although Plaintiff states in his motion to supplement that he seeks to add two (2) new defendants, the undersigned could identify only Andrew Peil as not being previously named. ECF Doc. 6-1 at 4.

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Northwest Florida Reception Center ("NWFRC"), awaiting transfer. Plaintiff's initial complaint names twelve (12) defendants, comprised of FDOC supervisory or administrative officials and employees of NWFRC, Columbia Correctional Institution ("Columbia CI"), and Walton Correctional Institution ("Walton CI").[2] Although the complaints include background information relating to prior assaults and transfers, many of which form the basis of other suits, the following allegations pertain specifically to the incidents forming the basis of the instant action.

While confined in a protective management unit at Wakulla CI in September of 2019, Plaintiff was assaulted by gang members, presumably for being labeled as a "snitch." As a result, he was transferred to another protective management unit at Columbia CI, where he was safe from harm. However, in January of 2020, Defendant Wanda Collins, a Columbia CI Classification Officer, "tricked" Plaintiff into signing a form that "waive[d] [his right to] protection" and requested release from the protective management unit. ECF Doc. 1 at 13. As a result, on January 31,

---

[2] Specifically, the initial complaint names FDOC Secretary Mark S. Inch, Secretary Representative Z. Culpepper, State Classification Officer Y. Holms, NWFRC Captain A. Bellamy, NWFRC Classification Supervisor M. Hood, Columbia CI Classification Officer Wanda Collins, Walton CI Assistant Warden A. Ralph, Walton CI Assistant Warden Quinn, Walton CI Classification Supervisor S. Carroll, Walton CI Major Martin, Walton CI Mental Health Counselor Kim Miner, and Walton CI Sergeant Thompson. ECF Doc. 1 at 2-4. Also, while the "Defendants" section of Plaintiff's complaint states that Sergeant Thompson works at NWFRC, the factual allegations regarding Sergeant Thompson all take place at Walton CI.

2020, Plaintiff was placed on a bus for transfer to Reception and Medical Center ("RMC"), where he was to be placed in the general population.  While on the bus during transport, Plaintiff was attacked by gang members.

On February 3, 2020, Plaintiff was placed on another bus for transfer to NWFRC.  Some of the gang members who attacked Plaintiff on January 31 were on the same bus, and they again attacked Plaintiff.  Upon arrival at NWFRC, Plaintiff was immediately placed in confinement.  Although he was housed with another inmate who was a gang member, Plaintiff admits that this inmate did not harm Plaintiff and allowed Plaintiff to report abuse to prison officials.  Thus, on February 5, 2020, Plaintiff filed a grievance reporting his February 3 attack on the bus and other prior attacks, requesting protective management, and making clear "that Plaintiff should not be transferred from NWFRC along with other none (sic) protection statused (sic) inmates."  *Id.* at 16.

Plaintiff alleges that Defendant Bellamy, upon receipt of Plaintiff's grievance, took no further action on the matter.  She "not only did not [en]sure that the proper paperwork was completed, she also did not submit notification to [the] classification supervisor, Defendant Hood, so that Plaintiff's status reflected he was on protection status, which would have placed the necessary holds on Plaintiff's transfer from NWFRC."  *Id.* at 15.  Nonetheless, Defendant Hood somehow received Plaintiff's February 5 grievance and subsequently denied it, stating, "[a]fter review, an

emergency is not found to exist.  You are not in substantial risk of personal injury .

. . . You are in confinement pending a resolved protection transfer." *Id.* at 16.

Subsequently, on February 10, 2020, Plaintiff was transferred from NWFRC to Walton CI.  Plaintiff alleges the same gang members that attacked Plaintiff on the transfer busses on January 31 and February 3 were again on the transport bus with him and again attacked him.  Upon arrival at Walton CI, Plaintiff filed a grievance reporting the attack, and he was immediately placed in confinement on "protection status" pending an investigation and ICT hearing.  On February 21, 2020, while Plaintiff was still on protective status and housed alone, Officer Poe and Defendant Thompson placed another inmate in Plaintiff's cell who sexually assaulted Plaintiff. Plaintiff alleges a number of claims against several of the Walton CI Defendants regarding their failure to protect Plaintiff prior to the assault and failure to provide appropriate medical care after the assault.

On March 4, 2020, Walton CI Defendants Carroll, Ralph, Martin, and Quinn told Plaintiff, "[w]e are going to recommend you be returned to the [protective management unit]." *Id.* at 21.  However, Plaintiff alleges that Defendants instead "merely recommended a resolved protection transfer" rather than a "true protection unit." *Id.*  Thus, on March 16, 2020, Plaintiff was transferred back to NWFRC, where he is presently confined.

In addition to the facts above, in his proposed supplemental complaint, Plaintiff clarifies that he is in the general population, rather than protective custody,

at NWFRC.  Plaintiff also names Peil as an additional Defendant and identifies the following events, involving Peil and Defendant Bellamy, which Plaintiff alleges demonstrate he is in imminent danger of serious physical injury:

On May 4, 2020, while Plaintiff was in the NWFRC law library, Peil took possession of Plaintiff's grievances and a motion Plaintiff had prepared for another inmate.  Peil then called Defendant Bellamy to the library.  At that time, Peil and Bellamy took Plaintiff into an office and Plaintiff was placed in handcuffs.  Peil handed Plaintiff's grievances to Bellamy, who, upon reading the grievances, accused Plaintiff of being a "punk ass snitch" and a "writ writer."  ECF Doc. 6-1 at 27. Bellamy then "slap[ped] Plaintiff about the face and advised Peil to do the same, and Peil slapped the Plaintiff."  *Id.*  Bellamy "then held a homemade knife to the Plaintiff's neck and advised [him], we are sick of your [complaining] and grievance [writing]."  *Id.*  She then directed Peil to "insert his fingers into Plaintiff's rectum[,] claiming they were looking for drugs."  *Id.*

Bellamy told Plaintiff that, if he "report[ed] any of what took place" or continued to write grievances, she would "put any entire foot in [Plaintiff's] ass" and "have [him] beat to death."  *Id.*  Subsequently, on May 10, 2020, Bellamy issued Plaintiff a disciplinary report, claiming that the motion Plaintiff had prepared for another inmate was contraband.  On May 14, 2020, Plaintiff was found guilty of possession of contraband and given fifteen (15) days probation.

## II.    DISCUSSION

As an initial matter, Plaintiff has recently filed four (4) other similar actions in this Court, two (2) of which have pending recommendations of dismissal for Plaintiff's failure to demonstrate imminent danger, one (1) of which was already dismissed under § 1915(g), and one (1) which the Court determined was sufficient to be served. *See* (1) 4:19-cv-126-WS-MAF (alleging a pattern of resolved protection transfers is insufficient to protect Plaintiff from harm (pending)); (2) 5:19-cv-82-TKW-MJF (alleging deliberate indifference for failure to protect against sex offenders arising out of conduct at Calhoun CI and seeking a transfer to Plaintiff's choice of institution (dismissed)); (3) 5:20-cv-138-TKW-MJF (containing the same or similar allegations as those in 5:19-cv-82 (R&R for dismissal)); and (4) 4:20-cv-233-AW-MAF (filed the same day as this action and seeking compensatory and punitive damages for failure to protect arising out of incidents at Wakulla CI (R&R for dismissal)).[3]  Each case includes claims of assault by various gang members or sex offenders at different institutions and allegations of failure to protect against correctional institution employees.

These other cases are relevant to the instant Amended R&R because the crux of each case, as it is here, is that Plaintiff has been labeled a "snitch" and his

---

[3] In that case, Plaintiff has filed a similar objection, motion to supplement, and proposed supplemental complaint as in this action, seeking to add new allegations (identical to those asserted here) regarding Peil and Defendant Bellamy. *See* Case No. 4:20cv233-AW-MAF at ECF Doc. 6.

complaints for protection have all resulted in resolved protection transfers, which have been insufficient to protect him.  In each case, as in this one, Plaintiff names Secretary Inch as a defendant and seeks to be transferred to either an institution of his choice or to a particular institution.  Additionally, in each case, as in this one, Plaintiff titles his complaint "Imminent Danger of Serious Physical Injury" and seeks exemption from the three-strike rule.

Plaintiff has been allowed to proceed under the imminent danger exception in one (1) of the pending cases, Case No. 4:19-cv-126-WS-MAF.  In that case, Judge Stampelos determined that Plaintiff's allegations that resolved protection transfers are not sufficient to protect Plaintiff from harm were sufficient to show an imminent danger.  The Court's determination that Plaintiff established imminent danger in that case, however, is not a free pass for Plaintiff to file other actions under the Prison Litigation Reform Act ("PLRA").  Rather, as to each action filed, Plaintiff must make a specific showing of imminent danger relating to the claims asserted.  *See Brown v. Lyons*, 977 F.Supp.2d 475, 481 (E.D. Pa. 2013) (finding that the imminent danger exception is a "narrow opening for a particular type of claim" and does not give prisoners "a license to swamp the court with claims whenever they successfully state a claim of imminent danger") (citing *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (finding that the "unmistakable purpose [of the exception] is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy

for an imminent danger," not to allow such a litigant to "file an unlimited number of lawsuits, paying no filing fee")).

As District Judge Wetherell stated in his order adopting a report and recommendation of dismissal under § 1915(g) in Case No. 5:19cv82-TKW-MJF, "I have not overlooked Case No. 4:19cv126-WS-CAS in which Plaintiff was allowed to proceed *in forma pauperis* in a substantially similar suit under the 'imminent danger of serious physical injury' exception in §1915(g).  However, unlike that case in which Plaintiff alleged that he was in imminent danger of serious physical injury at the facility where he was housed when the operative complaint was filed, Plaintiff did not allege any facts in this case indicating that he was in imminent danger of serious bodily injury at the facility where he was housed when the operative complaint in this case was filed." *Id.* at ECF Doc. 13.  Likewise, Plaintiff has failed to show in this case that he is imminent danger of serious physical injury at his current institution.

Additionally, the undersigned recommends that Plaintiff's motion to supplement be denied as futile.  Specifically, Plaintiff's proposed supplemental complaint seeks to bring claims based on events that occurred *after* Plaintiff filed this action, which therefore could not have been exhausted at the time of this filing.  Also, those claims are unrelated to the failure to protect claims in this action.

### A.    Three-Strike Status and Lack of Imminent Danger

Plaintiff does not dispute that he is a three-striker under the PLRA.  That is, Plaintiff has filed at least three (3) cases as a prisoner that were dismissed as frivolous, malicious, or for failure to state a claim.  *See* 28 U.S.C. § 1915(g); ECF Doc. 1 at 9.  Indeed, this Court has recognized, in several previous cases Porter has filed, that Porter has accrued three (3) strikes under § 1915(g).  *See, e.g., Porter v. Inch*, 2019 WL 3805797 (N.D. Fla. Jul. 23, 2019) (recommending dismissal of Porter's civil rights action pursuant to the three-strikes bar and identifying qualifying cases), *report and recommendation adopted*, 2019 WL 3804489 (N.D. Fla. Aug. 13, 2019).  A prisoner who has three (3) strikes cannot proceed under the PLRA unless he demonstrates he is imminent danger of serious physical injury.  *See* 28 U.S.C. § 1915(g); *see also Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004).  Plaintiff has failed to make such a showing here.

Notably, Plaintiff cannot rely on either past conduct or post-complaint events to establish imminent danger.  Instead, Plaintiff must demonstrate he was in imminent danger of serious physical injury *at the time he initiated this proceeding*. *See Medberry v. Butler,* 185 F.3d 1189 (11th Cir. 1999) (holding that, to fall within the imminent danger exception, a prisoner must be in imminent danger at the time he files suit in district court).  Because the unrelated May 2020 incidents included in the proposed supplemental complaint did not occur until *after* the complaint was

filed, they are insufficient to show that Plaintiff was in imminent danger of serious physical injury at the time he filed this suit in April.

Moreover, even if the undersigned considered that incident to be relevant, it is nonetheless an isolated incident of past conduct that does not show a present danger to Plaintiff. The May 4 alleged assault is clearly a past incident. Similarly, Plaintiff's allegations that Bellamy threatened to harm him if he filed additional grievances do not show an imminent danger of physical harm to Plaintiff because Plaintiff did, in fact, file additional grievances on or after May 4, including May 4 and May 9 grievances specifically directed at Bellamy, and Plaintiff does not allege that any additional physical harm has come to him between May 4 and the filing of his motion to supplement on June 1. *See* ECF Doc. 6-2 at 30, 38-39.

Plaintiff's allegation of prior assaults, particularly those which occurred at Walton CI, where Plaintiff is no longer confined, is simply not a basis for a finding of imminent danger in this action. *See Medberry*, 185 F.3d at 1193; *see also Brown*, 387 F.3d at 1349 (finding that the imminent danger exception to § 1915(g) requires "a present imminent danger, as opposed to a past danger"). "[A] prisoner's allegation that he faced imminent danger sometime in the past is an insufficient basis to allow him to proceed *in forma pauperis* pursuant to the imminent danger exception to the statute." *Medberry*, 185 F.3d at 1193 (citations omitted). The imminent danger exception is construed narrowly and is available only "for genuine

emergencies," where "time is pressing" and "a threat … is real and proximate." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

Indeed, other than the new May 2020 incidents, none of the past violence Plaintiff identifies occurred at his current institution, NWFRC. Markedly absent from Plaintiff's quite lengthy and detailed complaints are any allegations of violence or threats of violence from the time Plaintiff returned to NWFRC on March 16 to the filing of this action on April 28. Plaintiff is a prolific filer and no stranger to the courts.[4] If there had been any incidents of violence or threats of violence at NWFRC related to the claims in his initial complaint, he would have certainly included them in his complaints. Thus, Plaintiff has failed to show that he was or is in imminent danger at NWFRC, regardless of whether he is in the general population or administrative confinement.[5]

To the extent Plaintiff relies on his label as a "snitch" to show that he is *always* in imminent danger (unless placed in protective custody), such reliance is misplaced.

_____

[4] Plaintiff has filed at least nineteen (19) state court cases and eleven (11) state court appeals, as well as, eleven (11) federal court cases that were dismissed as strikes. ECF Docs. 1 at 7-9, 6-1 at 8-10. A non-exhaustive review of PACER reveals that there are at least twenty-seven (27) federal actions in Florida under Plaintiff's name, Aaron C. Porter or Aaron Carl Porter.

[5] In Plaintiff's initial complaint, he states that he was granted a resolved protection transfer and that he was "back at NWFRC awaiting … transfer." ECF Doc. 1 at 24. Plaintiff never states in his initial complaint that he is in the general population while at NWFRC. According to the Florida Administrative Code, "[i]f a decision is made to transfer the inmate … to resolve the inmate's need for protection at the inmate's current location, the inmate shall be kept in administrative confinement until the transfer is completed." Fla. Admin. Code R. 33-602.220(3)(c)(5). Thus, the undersigned initially interpreted Plaintiff's allegations to mean that he was in administrative confinement at NWFRC. In Plaintiff's proposes supplemental complaint, he clarifies that he is in the general population. As stated above, that change does not alter the undersigned's determination that Plaintiff is not in imminent danger of serious physical injury.

Merely being labeled a "snitch," without a showing of specific, credible, real and proximate danger at the time of filing, is insufficient to invoke the imminent danger exception under § 1915(g). *See Taylor v. Allen*, 2009 WL 1758801, at *2 (S.D. Ala. Jun. 16, 2009) (holding that plaintiff's allegations of being labeled a "snitch" by defendant did not invoke the imminent danger exception because "[t]his exception ... require[s] *specific* allegations of present imminent danger that may result in serious physical harm").

Finally, while Plaintiff alleges throughout his complaint and proposed supplemental complaint that he is in imminent danger, such allegations are merely conclusory, non-specific, and insufficient to establish "imminent harm" under 28 U.S.C. § 1915. *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (finding that general allegations that are not grounded in specific facts indicating that serious physical injury is imminent are not sufficient to invoke the exception to § 1915(g)). To fall within the imminent danger exception, Plaintiff's complaint must include "specific, credible allegations of imminent-danger of serious physical harm." *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1179 (10th Cir. 2011). Allegations that "describe[] merely a hypothetical or speculative danger and fail[] to suggest that any specific threat has been made against plaintiff" are also insufficient. *Cole v. Tifft*, 2009 WL 3668094, at *2 (N.D. Fla. Oct. 23, 2009) (citing *Luedtke v. Bertrand,* 32 F.Supp.2d 1074, 1077 (E.D. Wis. 1999) (plaintiff's "vague allegation of a conspiracy among the defendants to beat, assault, injure, harass and retaliate against

him are insufficient and lack the specificity necessary to show an imminent threat of serious physical injury") and *Welch v. Selsky,* 2008 WL 238553, at *5 (N.D.N.Y. Jan. 28, 2008) ("[t]he imminent danger an inmate faces ... must be real, and not merely speculative or hypothetical")).

Aside from Plaintiff's conclusory allegations of danger and references to past conduct, Plaintiff has provided no specific facts indicating that serious physical injury is imminent. *See Cooper v. Bush,* 2006 WL 2054090 (M.D. Fla. Jul. 21, 2006) ("Plaintiff's vague and conclusory allegations of possible future harm are insufficient to trigger the [imminent danger] exception"). Thus, the undersigned recommends that Plaintiff be denied *in forma pauperis* status and that this action be dismissed for Plaintiff's failure to pay the filing fee.[6]  *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) (holding that "the proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the provisions of § 1915(g)" because the prisoner "must pay the filing fee at the time he initiates the suit"); *Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir. 2001) (stating that, after three (3) meritless suits, a prisoner must pay the full filing fee at the time he initiates suit).

---

[6] Regardless, as discussed above, to the extent Plaintiff's "imminent danger" is his resolved transfers, he has already been allowed to proceed on that claim in Case No. 419-cv-126-WS-MF.

### B.    Plaintiff's Proposed Supplemental Complaint

As stated above, Plaintiff seeks to supplement his complaint.  The standard to be applied when considering a motion for leave to supplement a complaint under Rule 15(d) is the same standard applied when considering a motion for leave to amend a complaint under Rule 15(a).  *National Franchisee Association v. Burger King Corp.*, 2010 WL 11506370, at *1 (S.D. Fla. Jul. 16, 2010) (citation omitted). As a general rule, leave to amend under Fed. R. Civ. P. 15(a) is given freely.  *Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695, 699 (11th Cir. 2005) (per curiam).  That said, leave to amend is not guaranteed, and a trial court may deny such leave "in the exercise of its inherent power to manage the conduct of litigation before it."  *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008).  "A … court may deny such leave where there is substantial ground for doing so, such as undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment."  *Muhammad v. Sapp*, 494 F. App'x 953, 958 (11th Cir. 2012) (quoting *Reese*, 527 F.3d at 1263).

The undersigned finds that Plaintiff's proposed supplemental complaint is futile because it seeks to add claims that are not exhausted and that are unrelated to the claims currently before the Court.  First, Plaintiff could not have exhausted his claims relating to the May 2020 incident against Defendant Bellamy and Peil because they had not occurred at the time he filed this action.  *See Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (making clear that a plaintiff must exhaust his

administrative remedies *before filing suit* and holding that a supplemental complaint cannot cure an exhaustion defect); *see also Leao v. Hartman and Tyner, Inc.*, 2014 WL 12603171 *1 (S.D. Fla. Mar. 17, 2014) (denying plaintiff's motion for leave to amend to state a claim of retaliation based upon filing suit because the facts upon which the claim was based did not occur until after the original complaint was filed and finding that "the better practice for proceeding with this type of claim … is to proceed with a second, separate lawsuit").[7] Plaintiff's failure to exhaust these claims before this suit was filed bars him from proceeding with these claims in this action. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) (holding that exhaustion of all available administrative remedies is a mandatory precondition to suit).

Second, the May 2020 incident of alleged assault by Defendant Bellamy and Peil and subsequent threat of harm by Bellamy are unrelated to the claims alleged in the initial complaint. That incident has nothing to do with whether Plaintiff should be placed in protective custody or whether the named Defendants failed to protect him from other *inmates*. *See* Fed. R. Civ. P. 20; *see also* N.D. Fla. Pro Se form 14.1 (Rev. 1/2020), Instructions for Civil Rights Complaint Prisoner. Thus, regardless, it would not be proper to include those claims in this action. *See Grimes v. Yoos*,

---

[7] Although Plaintiff would not necessarily be barred from filing a new action on these additional claims, it appears that Plaintiff may not have exhausted these claims at all. The undersigned has reviewed the grievances attached to the proposed supplemental complaint and none relate to the May incident of assault, even though Plaintiff filed a grievance on May 4 against Bellamy and Peil for issuing him a disciplinary report and against Bellamy on May 9 for verbal abuse, harassment, and incompetency. ECF Doc. 6-2, at 30, 38-39.

2007 WL 9754540, at *1 (S.D. Fla. Aug. 14. 2007) (denying plaintiff leave to supplement pursuant to Federal Rule of Civil Procedure 15(d) because "Rule 15(d) limits a supplemental pleading to … matter related to the claim or defense presented in the original pleading" (citations omitted)).

Third, even if the Court were to look past the exhaustion and improper joinder issues, and allow Plaintiff leave to file a supplemental complaint, Plaintiff's proposed supplemental complaint would still be subject to dismissal. This is so because the May 2020 incidents relate to allegations of excessive force by prison officials and not assaults by inmates for being a snitch, and thus, even if they could constitute imminent harm, they would not open the door to allowing Plaintiff's failure to protect claims to proceed. *See* 4:19-cv-126-WS-MAF at ECF Doc. 13 at 3-4 (Although Judge Stampelos allowed Plaintiff to proceed under the imminent danger exception, he specifically limited the defendants and the claims to only those related to the allegation that Secretary Inch has a policy or custom of denying protection in favor of transfers.).

## III.   CONCLUSION

Accordingly, it is ORDERED that the May 21, 2020 Report and Recommendation (ECF Doc. 4) is VACATED.

And it is respectfully RECOMMENDED that:

1.      Plaintiff's motion for leave to proceed *in forma pauperis* (ECF Doc. 2) be DENIED.

2.      Plaintiff's motion for leave to supplement his complaint (ECF Doc. 6)

be DENIED as futile.

3.      This action be DISMISSED WITHOUT PREJUDICE under 28 U.S.C.

§ 1915(g).

4.      The clerk be directed to close this file.

Done in Pensacola, Florida this 19th day of June, 2020.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.